UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| COREY PERKEY, LYNDSAY ALLRED, SONYA GARCIA, and ANTHONY RAMSEY, Individually and on behalf of similarly situated current and former employees, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.: |
| PARDHAR, LLC d/b/a HOMEWATCH CAREGIVERS, DUNCAN EMPLOYMENT AND RESIDENTIAL SERVICES, LLC, WESTCO LIFECARE SERVICES, LLC, NURTURING INDEPENDENCE, INC, BRANDIE MASTON, TRACY WALTER, JESSICA DUNCAN, and AARON DUNCAN, Individually, | ) ) ) ) ) ) ) ) | FLSA COLLECTIVE ACTION<br><br>JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## COMPLAINT

Come now the Plaintiffs, Corey Perkey, Lyndsay Allred, Sonya Garcia, and Anthony Ramsey, individually and on behalf of other similarly situated employees (hereinafter "Plaintiffs"), by and through counsel, and sue Defendants Pardhar, LLC d/b/a Homewatch CareGivers, Duncan Employment and Residential Services, LLC, WestCo LifeCare Service, LLC, Nurturing Independence, Inc., Brandie Maston, Tracy Walter, Jessica Walter Duncan, and Aaron Duncan, individually, as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This case arises under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.* and Tennessee common law. Plaintiffs bring this claim individually and as part of a collective action pursuant to 29 U.S.C. § 216(b).

2. The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

3. Venue lies in the Eastern District of Tennessee pursuant to 28 U.S.C § 1391.

4. Defendant Pardhar, LLC, is a limited liability company registered with the Tennessee Secretary of State. It conducts significant business in the state as "Homewatch CareGivers" (hereinafter "Homewatch"). Homewatch CareGivers' website lists its principal Knoxville office at 3110 Henson Road, Suite 7, Knoxville, Tennessee 37921.

5. Defendant Nurturing Independence, Inc., is a Tennessee corporation whose principal place of business is 3110 Henson Road, Suite 7, Knoxville, Tennessee 37921.

6. Duncan Employment and Residential Services, LLC, is a Tennessee limited liability company (hereinafter "Duncan LLC"). Based on information and belief, it conducts business under the names Duncan Personal Services, Duncan Employment and Residential Services, LLC, and Duncan Remodeling. The Tennessee Secretary of State acknowledged Duncan was administratively dissolved on October 6, 2020, however, the principal—Defendant Aaron Duncan—continues to operate this business under the aforementioned assumed identities. The Tennessee Secretary of State's website lists Duncan LLC's registered agent's address as 3110 Henson Road, Suite 7, Knoxville, TN 37921.

7. WestCo Lifecare Services, LLC (hereinafter "WestCo") was a Tennessee limited liability company that the Tennessee Secretary of State acknowledges as being dissolved on October 12, 2018. However, as recently as October 2020, agents of Defendants Homewatch and Duncan made payments from a WestCo bank account on checks bearing Westco letterhead.

8. Defendant Jessica Walter Duncan is a resident of Anderson County, Tennessee. Based on information and belief, she is one of the managers of Defendant Pardhar, LLC, directs the operation of Homewatch, and is one of the principal officers of Defendants Nurturing Independence, Inc. and WestCo. She directs recruitment efforts to Tennessee residents,

regularly enters into contracts with people and entities who reside in Tennessee, and regularly conducts business in this state.

9. Defendant Aaron Duncan is a resident of Anderson County, Tennessee. He is the principal of Defendant Duncan Employment and Residential Services, LLC. He directs recruitment efforts to Tennessee residents, regularly enters into contracts with people and entities who reside in Tennessee, and regularly conducts business in this state.

10. Upon information and belief, Defendant Tracy Walter is a resident of Wisconsin and a principal or manager of Pardhar, LLC through Defendant Homecare. She directs recruitment efforts to Tennessee residents, regularly enters into contracts with people and entities who reside in Tennessee, and regularly conducts business in this state.

11. Defendant Brandie Maston is a resident of Knox County and one of the principal managers of Defendants Homewatch, WestCo, and Nurturing Independence.

12. Defendants Parhar, Nurturing Independence, Homewatch, Duncan LLC, and WestCo are engaged in interstate commerce, are commercial enterprises, and are covered employers under the FLSA.

13. Defendants Tracy Walter, Jessica Walter Duncan, Aaron Duncan, and Brandie Maston are the principals and managers of Defendant Homewatch. As it pertains to each Plaintiff and his or her employment, Defendants Walter, Jessica Duncan, and Maston dealt directly with each Plaintiff, were involved in the daily operations of Homewatch and the other entity-Defendants as to each Plaintiff's work assignment, implemented the entity-Defendants' wage policies, and refuted multiple Plaintiffs' assertions that they were entitled to overtime compensation. Therefore, Defendants Tracy Walter, Brandie Maston, Jessica Duncan, and Aaron Duncan are covered employers under the FLSA.

14. Defendant Aaron Duncan is the principal of Defendant Duncan LLC. As it pertains to each Plaintiff and his or her employment, Defendant Aaron Duncan dealt directly with each

Plaintiff, was involved in the daily operations of Duncan Employment and Residential Services, LLC as to each Plaintiff's work assignment, implemented Duncan Employment and Residential Services, LLC's wage policies, and refuted multiple Plaintiffs' assertions that they were entitled to overtime compensation.  Therefore, Defendant Aaron Duncan is a covered employer under the FLSA.

15. As it pertains to each Plaintiff and his or her employment, Defendants Maston, Jessica Duncan, and Aaron Duncan dealt directly with each Plaintiff, was involved in the daily operations of Homewatch CareGivers and Duncan Personal Services as to each Plaintiff's work assignment, implemented Homewatch CareGivers and Duncan Personal Services's wage policies, and refuted multiple Plaintiffs' assertions and questions that they were entitled to overtime compensation.  Therefore, Defendants Jessica Walter Duncan and Aaron Duncan are covered employers under the FLSA.

16. In addition to the Plaintiffs named herein, Defendants employ and have employed within the last three years numerous other similarly situated employees who are also covered employees under the FLSA.

## FACTUAL BASIS

**Piercing the Corporate Veil**

17. Plaintiffs incorporate by reference paragraphs 1 through 16 above.

18. Defendants Aaron Duncan and Jessica Walter Duncan are husband and wife.  On a date to be determined, they began operating their staffing and home healthcare businesses in such a way that their respective businesses and payroll overlapped.

19. For example, Defendant Homewatch lists its primary Knoxville office as 3110 Henson Road, Suite 7, Knoxville, TN 37921.  Until December 15, 2020, this address was listed as

Defendant Duncan LLC's registered agent's address. Per the Tennessee Secretary of State, that registered agent is Defendant Aaron Duncan.

20. Until December 15, 2020, Defendant Duncan LLC lists its primary office as 203 N. Farnum Street, Friendsville, Tennessee. This address is a personal residence owned by Defendant Aaron Duncan. Defendant Jessica Duncan paid the property 2019 property tax bill on this residence.

21. Based on information and belief, Defendants' frequently changing entity names, principal offices, and registered agents is a deliberate attempt to obfuscate the true ownership of these entities for the purposes of willfully violating the FLSA and committing fraud, as will be discussed further.

22. Defendants Tracy Walter and Jessica Duncan are mother and daughter. As the owners of the entity-Defendants, Plaintiffs aver they co-mingled funds, used these entities as a alter-egos, masked, and obfuscated these corporate entities for the purposes of willfully violating the FLSA and committing fraud.

23. Plaintiffs, acting ostensibly as employees of Defendant Homewatch, received payroll checks from Defendant Duncan LLC and Defendant Nurturing Independence LLC on multiple occasions.

24. In addition to using these entities in contravention of a public policy, namely the Fair Labor Standards Act as discussed at length below, these facts demonstrate the propriety of piercing the corporate veil as they demonstrate: (1) the use of the same office or business location; (2) the use of one business as a conduit for another; (3) the use of these entities for subterfuge in illegal transactions; and (4) the failure to maintain an arm's length relationship in related entities.[1]

---

[1] See, e.g., FDIC v. Allen, 584 F.Supp 386, 397 (E.D. Tenn. 1984) (outlining when it is appropriate to pierce the corporate veil in Tennessee).

**Relationship with Clients**

25. Plaintiffs incorporate by reference paragraphs 1 through 24, above.

26. Defendants WestCo, Nurturing Independence, and Homewatch are, among other things, home care staffing agencies. Their business model consists of contracting with individuals who need in-home medical-related care (e.g., elder care, dementia care, care for chronic conditions, hospital discharge care, respite care, etc.) and providing those individuals with in-home caregivers.

27. Defendant Duncan LLC is a non-medical home care staffing agency. Its business model consists of selecting and placing its employees with clients who need in-home assistance such as cleaning, cooking, transportation, personal hygiene, and bathing.

28. These entities are collectively referred to as "Defendants" because, while technically separate entities, the individual defendants operated these entities in such a way as the comingle funds, staff, and assignments such that they were effectively one single company.

29. Each of the individual-defendants conducts business as the entity-defendants interchangeably, freely, and without warning. For example, a plaintiff may do work for Defendant Homewatch and then be paid by Defendant Duncan LLC. The next week, that plaintiff will do the same work and be paid by Defendant Nurturing Independence. This shell game has the effect of the individual Defendants conducting one business under various names—frequently without explanation to their employees.

30. A necessary and foundational component of Defendants' business model is to recruit and retain personnel to fill its clients' vacancies or personnel needs.

31. Per contracts with each client, the client reimburses Defendants a predetermined rate, plus certain expenses, for each hour Defendants' personnel work with the clients.

32. Defendant Homewatch advertises job openings on its website and through other media. Applicants then follow traditional application processes, including submitting their résumés, being interviewed, etc.

33. Nearly all of Homewatch Caregivers' openings were for "home care" positions, even if not so named. A home care provider is someone who works temporarily or semi-permanently with a particular client until the client no longer needs the person, at which time the home care provider will move on to another client.

34. Duncan Employment and Residential Services, LLC's written application is entitled "An Independent Working Arrangement Between Two Parties." Except for using the terms "employment[ ]" and "contract[ ]" interchangeably, or using both words in the same phrase, the application requests the same information and contains the same acknowledgments as typical employment applications. It also contains acknowledgments that the applicant is an employee at will and that Duncan Employment and Residential Services, LLC is an equal opportunity employer.

**Facts common to each Plaintiff**

35. Plaintiffs incorporate by reference paragraphs 1 through 34 above.

36. Each Plaintiff does work or has worked for Defendants as a home care provider. They performed their duties at the homes of Defendants' clients.

37. Plaintiffs had no prior relationship with any of Defendants' clients.

38. All details about the jobs were made known to them by Defendants.

39. Defendants established the workweek applicable to each of Plaintiff.

40. Each Plaintiff's assignment's length was negotiated and set by Defendants and the client. Plaintiffs were not free to adjust their work schedule without seeking Defendants' permission, leave the assignment without permission, or hire helpers.

41.     Defendants required Plaintiffs to track and document each hour Plaintiffs worked per workweek; additionally, these Defendants scripted the timing, method, and manner in which Defendants required Plaintiffs to submit their timesheets.

42.     For most day to day supervision, Defendants delegated these responsibilities to the individual clients.  However, in the event of a performance problem or ordinary employment dispute, both the client and home care provider was expected to bring the matter to Defendants' attention.

43.     Defendants represented to its clients that their "extensively trained employees" will provide care to "enrich, engage, and empower" those clients.  To the employees, Defendants represented that "Homewatch University" would teach them about "nutrition, infection control, and condition-specific care techniques such as dementia care . . . Ongoing training provides professional growth and can position you for advancement within the company."[2] Homewatch describes "Homewatch University" as a "professionally-developed platform designed to train, inform, and support employees," and to provide "a minimum of 12 hours of continuing education annually."[3]

44.     Defendant Homewatch ostensibly employed each Plaintiff; however, he or she was frequently paid by checks from bank accounts owned by the other defendant-entities and bearing their letterhead.

45.     Homewatch Caregivers and Defendants set each Plaintiff's hourly pay rate.  All wages (excluding reimbursable expenses) were calculated by multiplying the Plaintiff's hourly rate by the number of hours worked in a single workweek.

46.     Defendants did not pay the Plaintiffs on a salary basis or a fee basis.

---

[2] Who We Are | Homewatch CareGivers, https://www.homewatchcaregivers.com/why-choose-us-/our-caregivers/who-we-are (last accessed January 27, 2021).
[3] Homewatch CareGivers University, https://www.homewatchcaregivers.com/why-choose-us-/homewatch-caregivers-university (last accessed January 27, 2021).

47. Given that the job assignment details were set by Defendants and their clients and based on the method Defendants used to calculate the Plaintiffs' compensation, Plaintiffs could not increase their profits through their own initiative (e.g., by assisting more clients).

48. While on assignment for Homewatch Caregivers, which often spanned many weeks or months, Plaintiffs' work schedules and job responsibilities did not allow for other gainful employment; Plaintiffs were wholly economically dependent on Defendants.

49. Plaintiffs did not market themselves or hold themselves out to the general public as available for hire. Instead, Plaintiffs' income flowed directly from Defendants' ability to market their business and attract paying clients.

50. Plaintiffs did not provide the equipment, supplies, or materials required to perform their jobs.

51. Defendants required their home care providers to notify them of all absences, including sick days.

52. Defendants prescribed the manner of Plaintiffs' dress, required them to conform to a code of conduct, an employee handbook, and an attendance policy.

53. Defendants forced employees to sign a contract that stated their wages would be reduced to "the federal minimum wage only, and not your normal wage" if the employee violated company policy.

54. Defendants never paid overtime wages for any hour over forty Plaintiffs worked in a workweek.

**Facts specific to Corey Perkey**

55. Plaintiffs incorporate by reference paragraphs 1 through 54 above.

56. Mr. Perkey is a home care provider. He worked for Defendants continuously from approximately April 2019 through September 2020.

57. Defendants compensated Mr. Perkey at a rate of $12 per hour.

58. Per the timesheets Defendants required him to submit, he sometimes worked multiple weeks without a day off, and he regularly worked between 60 and 80 hours per week.

59. Defendants refused to pay Mr. Perkey overtime because they claimed he was an independent contractor.

60. Mr. Perkey is personally aware of other individuals who worked for the Defendants as home care providers, whose duties were identical to his, that Defendants subjected to the same policies and procedures as he, who worked far greater than forty hours per week, and to whom Defendants likewise did not pay the overtime premium.

**Facts specific to Lyndsay Allred**

61. Plaintiffs incorporate by reference paragraphs 1 through 60 above.

62. Lyndsey Allred was a home care provider. She began working for Defendants in July 2019 and continued to do so until January 2021.

63. She regularly and consistently worked 80-plus hours per week at Defendants' clients' homes.

64. Ms. Allred's wage was $10.50 per hour, though Defendants routinely manipulated her working hours such that she received a lower effective rate.

65. Like Plaintiff Perkey, Ms. Allred performed identical tasks, worked similar hours, and reported to the same managers.

66. When Ms. Allred asked Defendants if they would pay overtime, Defendants rejected the idea by saying she was an independent contractor and not entitled to overtime.

67. The paychecks Ms. Allred received frequently came from other businesses than Homewatch Caregivers, such as Nurturing Independence, Inc., WestCo, and Duncan LLC.

68. Defendants also withheld insurance premiums from Ms. Allred's paycheck. In January 2021, Ms. Allred received a notice from her insurance carrier that her policy was canceled due to non-payment since October—however, Defendants continued to withhold such payments from her paycheck.

69. Defendants kept these insurance premiums for their own benefit.

**Facts specific to Sonya Garcia**

70. Plaintiffs incorporate by reference paragraphs 1 through 69, above.

71. Ms. Garcia is a home care provider who began her employment with Defendants in April 2018 and continued through December 2020.

72. She consistently worked six days per week and twenty hours per day.

73. Defendants paid Ms. Garcia $11.50 per hour.

74. When Ms. Garcia inquired about overtime, Defendants told her she was an independent contractor and not entitled to overtime. She only received an IRS form 1099 while employed.

75. At various times throughout her employment, Ms. Garcia received paychecks from Duncan Personal Services, Nurturing Independence, Inc., WestCo, and Homewatch Caregivers—all while ostensibly working for Defendant Homewatch.

**Facts specific to Anthony Ramsey**

76. Plaintiffs incorporate by reference paragraphs 1 through 75 above.

77. Mr. Ramsey was a home care provider from June 2020 to November 2020.

78. He consistently worked eighty hours per week and was paid $11.50 per hour. He did not receive overtime.

79. Mr. Ramsey is obligated to pay child support; such obligations were to be withheld from his paycheck and remitted directly to the state.

80. Defendants did withhold such payments from his paycheck, however, they were not remitting those payments to the state child support office.

81. Mr. Ramsey learned that Defendants were withholding such payments when he was contacted by a Child Support Enforcement official inquiring about such payments.

82. Defendants' kept these payments for their own benefit.

## CAUSES OF ACTION

**Fair Labor Standards Act: Failure to pay overtime**

83. Plaintiffs incorporate by reference paragraphs 1 through 82 above.

84. Pursuant to the FLSA, employers must compensate their employees for overtime work "at a rate not less than one and one-half times the regular rate at which the employee is actually employed" after the first forty hours of work. 29 C.F.R. § 778.107.

85. Defendants never paid Plaintiffs the overtime premium despite Defendants' knowledge or requirement that each of their home care providers worked substantially more than forty hours in a given week.

86. In an intentional, willful, and concerted effort to avoid the costs of overtime wages, state/federal withholdings, workers' compensation protection, health insurance premiums, and other mandated costs employers ordinarily absorb, Defendants used fraudulent accounting practices to manipulate Plaintiffs' working hours, obfuscate the payment of overtime, and flat out lie regarding the withholding of certain benefits, such as insurance premiums and child support remittance.

87. Whenever home care providers inquired about their entitlement to overtime compensation, Defendants knew that their explanation that their employees were independent

contractors, and thus not entitled to overtime, was false and inaccurate. But, they repeated this assertion, and variations of it, to avoid paying the aforementioned benefits.

88. These employee-plaintiffs did not fall under the FLSA exception for companionship services because (1) more than twenty percent (20%) of Plaintiffs' work consisted of "care services" as defined by the Department of Labor; and, (2) that exception is only available to individual families or households who employ such a caregiver—it does not apply to third party employers of direct care workers, such as home care staffing agencies like the Defendants.[4]

**Unjust Enrichment**

89. Plaintiffs incorporate by reference paragraphs 1 through 88 above.

90. Plaintiffs and other similarly situated employees conferred substantial benefits on Defendants by performing home care services on Defendants' behalf for which Defendants knowingly and willfully withheld the overtime premium that the law required Defendants to pay, and withheld other monetary benefits, such as taxes and insurance benefits.

91. To keep Plaintiffs working under this illegal arrangement, the individual Defendants acting as agents of the entity Defendants, willfully made misleading statements and representations they knew to be false.

92. Defendants were keenly aware that Plaintiffs and the other home care providers worked a substantial amount of inadequately and illegally uncompensated hours.

93. Defendants made and continue to make enormous profits directly tied to the uncompensated work performed by Plaintiffs and their coworkers. Allowing Defendants to reap

---

[4] U.S. Department of Labor Fact Sheet # 79A: Companionship Services Under the Fair Labor Standards Act (2015), available at: https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/whdfs79a.pdf

the extraordinary benefit of their employees' labor without compensating them is manifestly unjust.

## DAMAGES

94. As a direct, proximate, and exclusive result of Defendants' willful violations of the FLSA and their unjust enrichment from Plaintiffs' under-compensated labor, Plaintiffs and similarly situated employees have experienced substantial monetary losses and damages, including lost wages, attorney fees, and costs.

## COLLECTIVE ACTION CLAIMS

95. Like Plaintiffs, there are numerous current and former home care providers who, within the last three years, worked as Defendants' employees and whom Defendants have willfully misclassified as independent contractors. These individuals performed the same duties of home care providers, were subject to the same time keeping and reporting policies, were told the same false information about why they were not entitled to overtime compensation, were paid at a similar rate even for hours worked over forty, were subject to the same travel procedures, reported directly to at least one of the Defendants, and worked far more than forty hours every workweek.

96. Each Plaintiff has given his or her consent to proceed collectively in this action, and such consent will be filed with the Court.

97. Plaintiffs are representatives of those current and former employees and are acting on behalf of the other employees' interests, as well as their own interests, in bringing this action.

98. Defendants can readily identify through its records those home care providers who within the last three years have performed work for or on behalf of Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Corey Perkey, Lyndsay Allred, Sonya Garcia, and Anthony Ramsey, individually and on behalf of similarly situated employees, pray for the following relief:

99. Authorization to issue a notice pursuant to 29 U.S.C. § 216(b) at the earliest possible time to all current and former home care providers who performed work for Defendants during the three (3) years immediately preceding the filing of this action, to inform them that this action has been filed, of the nature of the action, and of their right to opt into this lawsuit;

100. A declaratory judgment that Plaintiffs and similarly situated workers were employees, not independent contractors;

101. A judgment that Defendants have violated the overtime provisions of the FLSA as to Plaintiffs and those similarly situated persons who opt into this action;

102. A judgment that Defendants' violations of the FLSA were willful;

103. An award of damages in the amount of unpaid overtime compensation to be proven at trial;

104. An award of liquidated damages in an amount equal to the overtime compensation shown to be owed them pursuant to 29 U.S.C. § 216(b);

105. An award of post-judgment interest;

106. An award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b); and,

107. An award of such other and further legal and equitable relief that may be appropriate under the facts of this case.

RESPECTFULLY SUBMITTED,

_s/ Jesse D. Nelson_
JESSE D. NELSON (BPR # 025602)
NELSON LAW GROUP, PLLC
*Attorneys for Plaintiffs*
10263 Kingston Pike
Knoxville, TN 37922
(865) 383-1053
jesse@NLGattorneys.com